UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| TRAVIS SCOTT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO. 3:08-CV-206 CAN |
| | ) | |
| DAVID DONAHUE, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**OPINION AND ORDER**

Travis Scott is a *pro se* prisoner who was granted leave to proceed against Dr. Israel for the denial of medical care based on the erroneous assumption that he was a medical doctor. In this summary judgment, it has become clear that, despite his title, Dr. Israel is not a physician; he is a prison administrator. As a result, this case will be dismissed.

**I.    PROCEDURE**

On July 8, 2008, after multiple prior attempts, Plaintiff, Travis Scott ("Scott"), successfully filed an amended complaint in this Court. On July 22, 2008, this case was screened pursuant to 28 U.S.C. § 1915A and Scott was granted leave to proceed against Dr. Israel for a denial of medical treatment in his individual capacity for monetary damages and in his official capacity for injunctive relief. On November 14, 2008, upon the consent of the parties, this case was reassigned to the undersigned for all purposes. On November 21, 2008, the injunctive relief claim was dismissed as moot because Scott had been transferred to a different prison. On February 27, 2009, Defendant, Dr. Israel, filed a motion for summary judgment. On March 23, 2009, Scott filed a response in opposition. On March 27, 2009, Dr. Israel filed a reply. On April

7, 2009, Dr. Israel also filed a motion to strike Scott's supporting affidavit. This Court may now enter its ruling on all pending matters pursuant to the parties' consent and 28 U.S.C. § 636(c).

## II. FACTS

The following facts are primarily not in dispute. Where the facts are in dispute, this Court has determined that the disputes are either not material or has chosen to address such disputes in the Court's substantive analysis of the issues.

Scott is an inmate who ingested several foreign objects in 2007 and 2008 while he was incarcerated at the Westville Correctional Facility. [Doc. No. 32-6 at ¶ 5 and 35-2 at 6]. His treating physicians monitored him to see if those objects would pass or cause an obstruction. [Doc. No. 32-6 at ¶ 7 and 35-3 at 1]. The physicians did not find any signs that the foreign objects caused either an obstruction or a perforation of his bowel. [Doc. No. 32-6 at ¶ 8 and 35-3 at 1].

Dr. Israel is the Health Care Administrator at the Westville Correctional Facility, but he is not a medical doctor, he is a doctor of psychology. [Doc. No. 32-2 at 1]. Dr. Israel was not one of Scott's treating physicians and has no control over the medical evaluations or treatments of inmates. [Doc. No. 32-2 at 2]. Dr. Israel was a prison administrator who processed grievances and knew that Scott had a medical problem and was dissatisfied with his treatment. [Doc. No. 32-2 at ¶ 6 and 35-3 at 2].

In August 2008, Scott was transferred to the New Castle Correctional Facility. [Doc. No. 35-2 at 6]. In October 2008 he received an upper GI endoscopy to remove two objects from his bowel, but no injury to the bowel was found. [Doc. No. 35-3 at 3-4].

**III.    ANALYSIS**

   A.   Standard of Review

Summary judgment is proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Lawson v. CSX Transp., Inc., 245 F.3d 916, 922 (7th Cir. 2001). In determining whether a genuine issue of material fact exists, this Court must construe all facts in the light most favorable to the nonmoving party as well to draw all reasonable and justifiable inferences in favor of that party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); King v. Preferred Technical Group, 166 F.3d 887, 890 (7th Cir. 1999). To overcome a motion for summary judgment, the non-moving party cannot rest on the mere allegations or denials contained in its pleadings. Rather, the non-moving party must present sufficient evidence to show the existence of each element of its case on which it will bear the burden at trial. Celotex v. Catrett, 477 U.S. 317, 322-23 (1986); Robin v. Espo Eng'g Corp., 200 F.3d 1081, 1088 (7th Cir. 2000). Where a factual record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citing Bank of Ariz. v. Cities Serv.s Co., 391 U.S. 253, 289 (1968)).

   B.   There is No Evidence that Scott's Medical Care was Deficient

Scott claims that Dr. Israel was deliberately indifferent to his serious medical needs "by not sending [him] for surgery for the items [he] ingested." [Doc. No. 35-2 at 4]. "In Oct. '07 I Plaintiff Travis Scott did in fact ingest a ink pen. And in April 2008 I did in fact swallow a full

size pencil." [Doc. No. 35-2 at 6]. It is undisputed that Scott ingested foreign objects, but there is no evidence that surgery was warranted while he was at Westville. Scott's argument is based solely on timing: he did not get surgery when he was at Westville, but he did get surgery after he was transferred to New Castle. What is missing is any evidence that surgery was warranted while he was at Westville. "On summary judgment, in particular, it is clear that mere temporal proximity is not enough to establish a genuine issue of material fact." Andonissamy v. Hewlett-Packard Co., 547 F.3d 841, 851 (7th Cir. 2008) (quotation marks and citation omitted).

Dr. Michael Mitcheff, D.O., declares that Scott was monitored "to see whether these objects would pass naturally or cause an obstruction." [Doc. No. 32-6 at ¶ 7]. He also declares that Scott "did not show any physical signs of obstruction, or any signs of perforation of the bowel or other complications." [Doc. No. 32-6 at ¶ 8]. He even declares "that an operation to remove the pen and spork could be more dangerous to the patient than leaving the objects where they were and letting them pass naturally." [Doc. No. 32-6 at ¶ 6].

> For a medical professional to be liable for deliberate indifference to an inmate's medical needs, he must make a decision that represents such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment.

Jackson v. Kotter, 541 F.3d 688, 697 (7th Cir. 2008) (quotation marks and citations omitted). Though it is unclear why an endoscopy was performed after Scott was transferred to New Castle, it is clear that he has presented no evidence that it was a substantial departure from accepted professional judgment, practice, or standards to have delayed surgery while monitoring his condition. Therefore, even if Dr. Israel had been Scott's treating physician, Scott would not have established any basis for liability.

C.  Dr. Israel is Not a Medical Doctor

Dr. Israel was not Scott's treating physician – he is not even a physician. Dr. Israel does not dispute that Scott consumed foreign objects, but he states in his declaration that he is not a medical doctor and that "[a]s the Health Care Administrator, I have no control over the medical evaluations and treatment received by the inmates . . .." [Doc. No. 32-2 at 2]. Scott declares that "Dr. Israel was in fact deliberately indifferent to my serious medical issues and placed my life in danger by not ordering surgery while at Westville Corr. Facility." [Doc. No. 39 at ¶ 15]. Though Scott makes this statement under oath, it is not a statement of fact based on personal knowledge -- it is a legal conclusion.

> [C]onclusory statements, unsupported by the evidence of record, are insufficient to avoid summary judgment. We repeatedly have held that self-serving affidavits without factual support in the record will not defeat a motion for summary judgment. Rule 56 demands something more specific than the bald assertion of the general truth of a particular matter; rather it requires affidavits that cite specific concrete facts establishing the existence of the truth of the matter asserted.

Albiero v. City of Kankakee, 246 F.3d 927, 933 (7th Cir. 2001) (quotation marks, citations, parentheses, and brackets omitted). As previously discussed, Scott has presented no evidence to demonstrate that surgery was warranted while he was at Westville. Moreover, he has no factual basis for his claim that Dr. Israel is a medical expert rather than a prison administrator.

Despite his title, Dr. Israel is no more a medical doctor than was Dr. J. or Dr. Phil. Julius Erving was an exceptional basketball player who sported the moniker, "Dr. J", but he was not a physician. Dr. Phil is a successful television personality who has a Ph. D. in clinical psychology, but he is not a physician. Dr. Israel is the health care administrator at the Westville Correctional

5

Facility who earned a doctor of psychology, but he is not a physician either. As such, it was not within his authority to make medical decisions.

> If a prisoner is under the care of medical experts a non-medical prison official will generally be justified in believing that the prisoner is in capable hands. This follows naturally from the division of labor within a prison. Inmate health and safety is promoted by dividing responsibility for various aspects of inmate life among guards, administrators, physicians, and so on. Holding a non-medical prison official liable in a case where a prisoner was under a physician's care would strain this division of labor.

Greeno v. Daley, 414 F.3d 645, 656 (7th Cir. 2005) (ellipsis omitted) *(citing* Spruill v. Gillis, 372 F.3d 218, 236 (3rd Cir. 2004)).

Scott admits in his declaration that he was seen by at least four different physicians and was under their care. Nevertheless, he does not say, nor provide any evidence, that any physician at Westville recommended surgery as a result. Neither does he provide any evidence that Dr. Israel obstructed him from having surgery or was in any way involved in his medical treatment. Therefore he has provided no evidence to support his claim that Dr. Israel is financially liable to him for a denial of medical treatment.

    D.    <u>Processing a Grievance is Not Enough to Establish Liability</u>

Scott declares that he filed grievances about his medical care and that Dr. Israel knew that he had a medical problem. Although Dr. Israel declared that he was involved in working on inmate grievances, this is simply too slender a reed upon which to base liability. Scott attempts to impose liability on Dr. Israel because Dr. Israel did not order that he have surgery. However, Dr. Israel did not have the authority to order surgery and there is not even any basis in this record for finding that surgery was warranted while Scott was at Westville.

Dr. Israel's awareness of Scott's medical condition and Scott's dissatisfaction with his care is legally insufficient to support liability.

> Burks's contention that any public employee who knows (or should know) about a wrong must do something to fix it is just an effort to evade, by indirection, Monell's rule that public employees are responsible for their own misdeeds but not for anyone else's. Section 1983 establishes a species of tort liability, and one distinctive feature of this nation's tort law is that there is no general duty of rescue. DeShaney v. Winnebago County Dep't of Social Services, 489 U.S. 189 (1989), shows that this rule applies to constitutional tort law, as to private tort law, for DeShaney holds that a public employee who knows about a danger need not act to avert it. . . . A layperson's failure to tell the medical staff how to do its job cannot be called deliberate indifference; it is just a form of failing to supply a gratuitous rescue service.

Burks v. Raemisch, 555 F.3d 592, 596 (7th Cir. 2009) (parallel citations omitted, brackets in original).

Scott alleged that Dr. Israel denied him surgery, but Scott has not presented any evidence showing that surgery was warranted while he was at Westville, that surgery was recommended by any physician, that Dr. Israel is a physician, that Dr. Israel prevented him from having surgery, or that Dr. Israel denied him medical care in any way. "[M]ere speculation or conjecture will not defeat a summary judgment motion." Rockwell Automation, Inc. v. Nat'l Union Fire Ins. Co., 544 F.3d 752, 757 (7th Cir. 2008) *(quoting* McCoy v. Harrison, 341 F.3d 600, 604 (7th Cir. 2003). Therefore the summary judgment motion will be granted.

E. Motion to Strike

One final item remains. Dr. Israel moved to strike Scott's declaration. However, because Dr. Israel has prevailed, the motion to strike is **DENIED AS MOOT**. [Doc. No. 40].

IV. CONCLUSION

7

Accordingly, this Court now **GRANTS** Dr. Israel's motion for motion for summary judgment and awards costs. [Doc. No. 31]. Further, this Court now **DENIES AS MOOT** Dr. Israel's motion to strike Scott's supporting affidavits. [Doc. No. 40]. Additionally, the Clerk is instructed to term this case in favor of Dr. Israel and award costs.

**SO ORDERED**

Dated: July 24, 2009

S/Christopher A. Nuechterlein  
Christopher A. Nuechterlein  
United States Magistrate Judge